2005 ME 66

**Kevin MILLIEN**

v.

**COLBY COLLEGE et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2005.

Decided: June 9, 2005.

---

M. Michaela Murphy, Esq. (orally), Jabar, Batten, Ringer & Murphy, Waterville, for plaintiff.

Melissa A. Hewey, Esq. (orally), Drummond, Woodsum & MacMahon, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Kevin Millien appeals from a judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) in favor of Colby College following a jury-waived trial. He asserts that the court erred in concluding that the disciplinary process Colby afforded him did not constitute a breach of contract. We affirm the judgment.

## I.  BACKGROUND

[¶ 2] Just prior to the fall semester of his senior year at Colby College, Kevin Millien was accused by another Colby student of sexual assault. As a result of the college's disciplinary proceedings that ensued, Colby placed Millien under an administrative restraining order, and Millien ultimately lost his scholarship. Throughout the proceedings, Millien admitted that he had engaged in sexual activity with the claimant, but insisted that the activity was consensual.

[¶ 3] Colby's disciplinary system is explained in part in its student handbook. The college's Judicial Board, which is comprised of students and faculty, hears most of the school's disciplinary matters. Sexual assault cases, however, are heard by the Dean's Hearing Board, and the student handbook expressly provides that the "Judicial Board does not handle sexual assault cases." The Dean's Hearing Board is comprised of three deans, a faculty member from the Judicial Board, and one student who is either the Chief Justice or Vice Justice of the Judicial Board. The handbook also describes an Appeals Board, comprised of students and faculty, that serves to "provide a formally structured panel of appeals to which any student may petition for a review of any case which the student feels has not been adjudicated fairly." The handbook explicitly mentions that appeals may be taken from decisions of the Judicial Board to the Appeals Board, but makes no explicit mention of a student's right to appeal from a decision of the Dean's Hearing Board to the Appeals Board. The handbook also contains a reservation clause that gives Colby the right to unilaterally alter the terms of the handbook without notice to students.[1]

[¶ 4] After the Dean's Hearing Board conducted a hearing and rendered a decision favorable to Millien, Colby's Dean of Students, Janice Kassman, separately advised Millien and the claimant of the result. Dean Kassman also advised Millien and the claimant of the claimant's right to appeal to the Appeals Board, as well as

---

1. The reservation clause states:
    NOTICE: The reader should take notice that while every effort is made to ensure the accuracy of the information provided herein[,] Colby College reserves the right to make changes at any time without prior notice. The College provides the information herein solely for the convenience of the reader and, to the extent permissible by law, expressly disclaims any liability which may otherwise be incurred.

her right to assistance from a victim's advocate paid for by the college. Millien was informed that he would have to retain his own counsel if he wanted legal representation for the appeal.

[¶ 5] The claimant filed a written appeal, and a three-member subcommittee of the Appeals Board reviewed the application and decided that the claimant was entitled to a de novo hearing before the Appeals Board. Following its hearing, the Appeals Board issued a written decision in which it found that the claimant's description of the events was more credible than Millien's, and that her conduct immediately after the incident was consistent with the conduct of a person who had been assaulted. The Appeals Board concluded that the claimant had not consented to sexual activity with Millien and found him responsible for sexual assault. The Board invoked a variety of sanctions, including prohibiting Millien from living in campus housing, eating in college dining halls, and being on campus after 11:00 P.M. He was placed on permanent disciplinary probation.

[¶ 6] The president of the college refused Millien's request to overturn the decision of the Appeals Board, and Millien subsequently initiated this breach of contract action in an effort to have the decision of the Dean's Hearing Board reinstated. At his jury-waived trial, Millien contended, among other things, that Colby breached its contract with him by permitting the claimant's appeal even though there was no explicit provision in the handbook authorizing an appeal from the Dean's Hearing Board to the Appeals Board. The trial court found that a contractual relationship existed between Colby and Millien, but also found that the contract was not "necessarily contained within or limited to the contents of the student handbook." The court determined that Colby was contractually obligated to provide Millien a disciplinary process that "meets common standards of fair play, meets the student's reasonable expectations and provides fundamental fairness," and that Colby did not breach this obligation. The court entered judgment for Colby, and this appeal followed.

## II. DISCUSSION

### A. Whether Colby Breached the Agreement by Allowing a Disciplinary Appeal

[¶ 7] Millien does not challenge the trial court's finding that Colby was contractually obligated to provide him a disciplinary process that "meets common standards of fair play, meets [his] reasonable expectations and provides fundamental fairness."[2] He claims, however, that the court erred in finding that Colby satisfied this obligation, because the claimant's appeal of the

---

**2.** Millien urges us to adopt the following language from *Goodman v. President & Trustees of Bowdoin College:*

> [W]hen handbook terms are deemed to constitute terms of the contract between a student and a college, a court should evaluate a college's disciplinary hearing procedures "to ensure that they fall within the range of reasonable expectations of one reading the relevant rules"; in contrast, when a college-student contractual relationship does not incorporate express terms, such as those from a handbook, a court should evaluate its disciplinary decisions under an ar-

bitrary and capricious standard, finding in favor of a student only when it determines that a college has failed to "act in good faith and on reasonable grounds."

135 F.Supp.2d 40, 58 (D.Me.2001) (quoting *Cloud v. Trs. of Boston Univ.*, 720 F.2d 721, 724–25 (1st Cir.1983)), *aff'd*, 380 F.3d 33 (1st Cir.2004). Because we affirm the trial court's finding regarding the contractual relationship between Millien and Colby College under the facts of this case, we see no need to adopt a fixed standard or standards governing the contractual relationship between students and private colleges or universities.

Dean's Hearing Board's decision to the Appeals Board was not authorized by the disciplinary process described in the student handbook and thus was not within the scope of his reasonable expectations.

[¶ 8] "The intent of the parties in entering a contract, whether a contract exists, and whether a breach has occurred are all questions of fact that we review for clear error." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044.

[¶ 9] The court found that the student handbook was "not a binding contract per se."[3] The court based this conclusion largely on the handbook's reservation clause. Under Maine law, "a reservation to either party of an *unlimited* right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory." *Corthell v. Summit Thread Co.*, 132 Me. 94, 99, 167 A. 79, 81 (1933). Thus, the court did not err in concluding that the handbook was not a binding contract or the exclusive source of the terms of the parties' agreement.

[¶ 10] The court also did not err in finding that Colby's allowance of an appeal from the Dean's Hearing Board to the Appeals Board did not constitute a breach of contract. The court expressly credited the testimony of Dean Kassman "concerning the existence and interpretation of the college's own disciplinary processes." Kassman testified to the College's reliance on the reservation clause to make changes to the handbook "over the course of a year, ... to leave open avenues for us to make reasonable changes when we wanted to [without notice to the students]." She also testified that Colby's disciplinary process is not intended to provide a level of process similar to that found in a court of law that follows the rules of evidence, but rather is intended to be an informal process in the nature of "a quasi legal system with people of goodwill who will use common sense to try to come to some resolution." Kassman testified that although the procedures of the Dean's Hearing Board are not set forth in the handbook, the Board has been in place since 1981. She and other witnesses testified to other circumstances in which decisions of the Dean's Hearing Board could have been appealed to the Appeals Board.

[¶ 11] Both the student handbook and a pamphlet about sexual assault address the responsibility of the Dean's Hearing Board to adjudicate claims of sexual assault. The possibility of subsequent appellate review by the Appeals Board is suggested by the student handbook as well as by Colby's established practices. The handbook states that the Appeals Board serves to "provide a formally structured panel of appeals to which *any student* may petition for a review of *any case* which the student feels has not been adjudicated fairly."[4]

---

3. We do not consider Colby's argument that the Superior Court's conclusion that the handbook is not itself a binding contract should be interpreted to mean that there was no contractual relationship between the parties. Colby did not file a cross-appeal challenging the court's finding that "there is a contractual relationship between the plaintiff and the college." Because Colby did not preserve its challenge to the court's finding regarding contract formation by filing a cross-

appeal, we decline to address it. *See Costa v. Vogel*, 2001 ME 131, ¶ 1 n. 1, 777 A.2d 827, 827–28.

4. Both the Appeals Board and the Judicial Board sections of the student handbook fall under the general heading of "Student Disciplinary Procedures" in appendix XI. Appendix XI also states that an accused student may request a hearing before the Dean's Hearing Board in lieu of a hearing before the Judicial Board. The section on sexual assault "Disci-

(Emphasis added.) The handbook does not restrict Appeals Board review to cases that originate with the Judicial Board. In addition, other decisions of the Dean's Hearing Board could have been appealed to the Appeals Board in recent years.

[¶ 12] Although Millien might not have had actual knowledge of the possibility of an appeal until Kassman informed him of it after the decision of the Dean's Hearing Board, the contract required only that the disciplinary process meet his reasonable expectations. The reservation clause in the handbook and the other evidence support the court's conclusion that Millien and other Colby students should reasonably expect that an accusation of sexual assault will be considered in the first instance by the Dean's Hearing Board, and that its decision may be subject to appellate review by the Appeals Board. The court did not clearly err in concluding that Colby's disciplinary process, including appellate review of the Dean's Hearing Board's decision by the Appeals Board, was within the scope of what Millien should have reasonably expected.

B. Whether Colby Breached the Agreement's Requirement of a Fundamentally Fair Disciplinary Process

[¶ 13] The court found that Colby's disciplinary "procedure provides for notifying the accused of the nature of the accusations, a hearing before [an] impartial body with an opportunity to present evidence and state one's position, and a right to appeal." Millien does not challenge this general finding, but he contends that the process was fundamentally unfair because: (1) there were no valid grounds to grant an appeal under the written rules governing

the Appeals Board; (2) he was unrepresented at the hearing while the claimant and the Board had legal representatives; and (3) the Appeals Board refused his request to present evidence of a prior inconsistent statement by the claimant.

1. Grounds for the Appeal

[¶ 14] Millien asserts that Colby violated the handbook's provisions regarding the circumstances under which an appeal may be taken. The handbook provides that "cases may be appealed on the basis of new information which could not have been presented at the original hearing or when there is reason to believe that a violation of procedure occurred which could have affected the outcome." The procedures also state that the Board's decision whether to hear an appeal is based on "the content of the written appeal and on discussion at a meeting with the appellant and other appropriate parties." Millien contends that the subcommittee's actions were fundamentally unfair because there were insufficient grounds for an appeal and the subcommittee failed to meet with the claimant, as well as with him as an "other appropriate part[y]."

[¶ 15] The claimant's written notice of appeal set forth eight grounds, one asserting new information and the others asserting procedural errors. A subcommittee of the Appeals Board considered the notice of appeal and determined that the appeal should be permitted on some, but not all, of the eight grounds. Although the court found that the appeal did not result in a breach of contract, it did not make findings as to whether the appeal was justified on the basis of new information or a violation of procedure. Because

plinary Options" also refers to the Dean's Hearing Board. It can fairly be inferred that the general heading "Student Disciplinary Procedures" encompasses the sexual assault

"Disciplinary Options." Accordingly, a decision of the Dean's Hearing Board qualifies as "any case" and is appealable under the Appeals Board procedures.

Millien did not request additional findings of fact or conclusions of law on the issue pursuant to M.R. Civ. P. 52(a), "we will infer that the court made all the necessary findings of fact to support the judgment, if those findings are supported by evidence in the record." *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364, 369.

■ [¶ 16] Competent evidence in the record supports a finding that an appeal was justified either on the basis of new information or a procedural violation. The victim's advocate testified that she did not believe that a tape recording of a telephone conversation was available during the Dean's hearing, and Christine Wentzel, the faculty member on the subcommittee, testified that the tape was "new evidence which [she] believed [was not] admitted the first time the hearing was done." In addition, Wentzel testified that the subcommittee "felt that it was a procedural irregularity for [Dean Serdjenian,] who was fact-finding [for the Dean's Hearing Board,] to then move into the position of ... mediation or trying to offer ... a solution to both parties and then ... going back to the board and actually forcing a decision." Despite stating in her deposition that she did not think that the claimant was prejudiced by her refusal to agree to Serdjenian's proposal, Wentzel also testified that the mediation could have affected the outcome of the hearing.

■ [¶ 17] Because the record supports a finding that there were grounds for an appeal that satisfied the required criteria, we cannot conclude that the Appeals Board's decision to grant the appeal was fundamentally unfair or resulted in a breach of contract. Moreover, the Appeals Board's failure to meet with Millien or the claimant before it decided to permit the appeal did not result in a breach of contract. The Board's procedures do not require it to meet with the student accused of wrongdoing before it decides whether to permit an appeal if that student is not the appellant. As written, the procedures commit to the Board's discretion the decision as to with which "other appropriate parties" it will meet before it decides whether an appeal should proceed. Although the Appeals Board's failure to meet with the claimant before deciding to allow the appeal contravened Colby's appeals procedures, this procedural default was insubstantial and does not compel a finding of fundamental unfairness because the subcommittee received and considered the claimant's detailed statement of her grounds for appeal.

2. Legal Representation

■ [¶ 18] Millien contends that the Appeals Board hearing was fundamentally unfair because he had no legal representative at the hearing, even though the claimant was represented by a victim advocate who was a law school graduate and the Board was represented by its attorney. Millien does not assert that Colby was obligated to provide him with appointed counsel, but rather argues that it was unfair that the Appeals Board allowed the hearing to proceed because he did not have an attorney present. Colby contends that Millien had retained an attorney prior to the Appeals Board hearing and knew his attorney would be unavailable for the hearing, but nevertheless chose not to request a continuance.

[¶ 19] The record establishes that Millien had retained an attorney prior to the Appeals Board hearing, that his attorney was not available to attend the hearing, and that Millien did not request a postponement of the hearing to accommodate his attorney's schedule. Under these circumstances, it was not inherently unfair

for the hearing to proceed even though Millien's attorney was not present.

### 3. Prior Inconsistent Statements

[¶ 20] Millien also contends that the Appeals Board hearing was fundamentally unfair because he was not permitted to question the claimant regarding the statements she made before the Dean's Hearing Board indicating that she was not intoxicated at the time of the incident. Millien contends that these were inconsistent with the statements she made before the Appeals Board indicating that she was intoxicated at the time of the incident. He argues that because intoxication may raise doubts concerning mutual consent in a sexual assault case, he should have been permitted by the Appeals Board to introduce evidence of the claimant's earlier statement that she was not intoxicated.

[¶ 21] Colby argues that the claimant admitted at both hearings that she was intoxicated and, as a consequence, made no inconsistent statements. The court did not address the issue, concluding that to do so would be to "essentially conduct an appellate review of the decision."

[¶ 22] As Millien contends, the Appeals Board's refusal to consider evidence of the claimant's alleged prior inconsistent statements bears on the fairness of the process afforded to him, and should

have been considered by the court. Any error, however, in the court's failure to address this issue was harmless because the Appeals Board's decision to not entertain the evidence did not result in a fundamentally unfair process. *See Bouchard v. Frost,* 2004 ME 9, ¶ 8, 840 A.2d 109, 111 (noting that we will affirm a judgment based on a rationale different than that relied on by the trial court); *see also* Alexander, *Maine Appellate Practice* § 403 at 175 (2004).

[¶ 23] Addressing Millien's assertion that the claimant advanced a prior inconsistent position before the Dean's Hearing Board would have resulted in a "trial within a trial" before the Appeals Board. Millien does not assert that the claimant positively stated to the Dean's Hearing Board that she was not intoxicated at the time of the incident. Rather, Millien contends that because the claimant and a second student witness disagreed about the quantity of alcohol they each drank the night of the incident before the Dean's Hearing Board, it can be inferred that the claimant's original position was that she was not intoxicated.[5] The Appeals Board's decision to consider the claimant's statements made before it, but not those statements made before another body, was reasonable. *Cf. In re Maine Clean Fuels, Inc.,* 310 A.2d 736, 746 (stating that administrative agencies should be free to "fashion their own rules of procedure" and such

---

5. Millien testified before the court that the claimant never directly stated to the Dean's Hearing Board that she was not intoxicated on the night of the incident. Rather, he testified that the claimant told the Dean's Hearing Board that she had consumed two alcoholic drinks that night, and she took issue with another student who told the Board that the claimant had consumed more than five drinks. Millien infers from this that the claimant asserted before the Dean's Hearing Board that she had not been intoxicated at the time of the incident, although he does not

claim that she actually stated that before the Dean's Hearing Board. We note parenthetically that in a written statement prepared prior to the disciplinary hearings, the claimant stated that on the night of the incident, "[p]eople continued to drink and definitely were beginning to appear drunk, including myself." It is not clear from the record whether a copy of her statement was submitted to the Dean's Hearing Board, but the Superior Court could have reasonably inferred that it was.

restrictions may include restricting or precluding the right to cross-examine witnesses) (quotation marks omitted). In the informal setting of a private college's disciplinary process, this approach was not fundamentally unfair.

The entry is:

Judgment affirmed.